A. Franklin Mahoney, J.
In this CPLR article 78 proceeding the petitioner seeks an order annulling respondent’s determination that petitioner, as the widow of Jack I. Gross, was not entitled to the payment of a death benefit pursuant to the provisions of section 512 of the Education Law.
Jack I. Gross, a tenured school teacher in the City School District of Peekskill and a member of the New York State Teachers’ Retirement System, was discharged from his position on June 30, 1973.[1] He commenced a timely article 78 proceeding seeking reinstatement, back pay and other emoluments. While the article 78 proceeding was pending Mr. Gross accepted employment with the New York City Board of Education. While so employed he died on January 2, 1974. The deceased’s widow, petitioner herein, made application for benefits to respondent. On January 24, 1974, by letter, respondent advised that she was entitled to her husband’s accumulated contributions but not to the statutory death benefit by reason of his employment with the New York City Board of Education after he ceased to be on the payroll of the City School District of Peekskill.[2]
On March 20, 1974, IOV2 months after Mr. Gross’ demise, and presumably before any fiduciary was appointed to represent his estate, the article 78 proceeding was withdrawn pursuant to a stipulation signed by the deceased’s attorney and the attorney for the Peekskill School Board providing that the deceased was to be reinstated as of September, 1973, that back salary was to be waived as an offset against money earned since his termination as of June 30, 1973 and, further, that the estate of Mr. Gross or his beneficiary was to be entitled to retirement benefits accruing at the time of death.
The pertinent part of section 512 (subd b, par 2) of the Education Law reads as follows: "2. In addition to the return of accumulated contributions, a death heneñt also shall be payable upfbn the death of a member who dies before the effective date of his retirement, and was in service upon which *966 his membership was based when he died or was on the payroll in such service and paid within a period of twelve months prior to his death and had not been otherwise gainfully employed since he ceased to be on such payroll” (emphasis supplied).
Clearly, Jack Gross had lost his job with the City School District of Peekskill on June 30, 1973 and had been paid within a period of 12 months prior to his death. It is equally clear that he had been gainfully employed since he ceased to work in Peekskill.
The statutory standards are clear, precise and unambiguous. They command the nonpayment of the death benefit to the petitioner.
Petitioner’s contention that her husband had an absolute duty to mitigate his damages after his position was terminated and, further, since the discharge of that duty, by accepting employment in New York City, inured to the benefit of Peekskill, since the money earned would reduce the amount of back pay her husband would be entitled to, her husband was not gainfully employed, is unique, even ingenious, but without merit. This argument is premised on the hypothesis that had Jack Gross not died, he would have succeeded in his article 78 proceeding and Peekskill would have had to return him to his former position and pay all back pay less money earned. This hypothesis has two flaws. Jack Gross did die and, secondly, had he lived he might not have prevailed in his article 78 proceeding. Finally, on this point, the principle of damage mitigation is not so inflexible as to mandate or require that allegedly wrongfully discharged employees take other employment. The only requirement is that such an employee make reasonable efforts to minimize his loss. If such an employee is successful in finding other work it does not mean that he thereby becomes a "constructive employee” in the service of his former employer, nor does it mean that his second employment is not "gainful”.
Lastly, it cannot be said that the stipulation off March 24, 1974, signed by deceased’s attorney and the attorney for the school board, created any rights in petitioner or imposed any obligations on respondent. The death of a party revokes the authority of his attorney to represent him. Had petitioner, or anyone else, been appointed as executor (executrix) or administrator (administratrix) of the deceased’s estate there is authority that such a fiduciary might ratify acts taken for the *967 benefit of the deceased (Rosenberg v Caban, 16 NY2d 905). The act of an unauthorized agent can be ratified if there is a principal in being, disclosed or undisclosed, at the time of the act who could have authorized it (Restatement, Agency- 2d, § 84). However, in the case at bar there is no evidence that at the time of the execution of the stipulation there was any fiduciary of any kind who could have authorized the unauthorized act of deceased’s attorney. The stipulation has no legal efficacy.
The petition is dismissed.

. The court notified the New York State Comptroller as administrative head of the New York State Employees’ Retirement System of his right to intervene or file a brief (CPLR 1012, subd [c]). Comptroller advised he agreed with respondent’s position but would not intervene or file a brief. 6

. This finding was reviewed and approved by the Retirement Board of the New York State Teachers’ Retirement System on July 24, 1974.