OPINION OF THE COURT
Lucy Billings, J.
In this summary holdover proceeding petitioner seeks to evict respondent tenant Kathy Brady from 18 Abington Square, apartment 1, in New York County, because she has not maintained the apartment as her primary residence. Petitioner *335 seeks also to evict respondent undertenant John Brady from the apartment because he has not established any right to possession of the apartment.
I. THE FACTS PRESENTED AND THE ISSUES RAISED AT TRIAL
A. Respondent Kathy Brady’s Surrender of Possession of the Rent-Controlled Apartment
In 1949, Mesrob Vartanian, the named petitioner, identified in the petition as “Mesrobe Variarían,” leased apartment 1 at 18 Abington Square, a rent-controlled apartment, to Peter Brady and his wife. Before 1992, their daughter, respondent Kathy Brady, succeeded to her parents’ tenancy. At least since 1997, however, she has lived in Far Rockaway, New York, caring for her brother who suffered a heart attack in 1997.
A tenant’s need to care for an ailing relative does not, without more, support the conclusion of a nonprimary residence. (Sutton Realty v Vang, NYLJ, Mar. 12, 1992, at 25, col 3 [App Term, 1st Dept].) Here, the record included other indicators of Kathy Brady’s residence with her ailing brother in Far Rockaway, such as bills and other mail to her at the Far Rock-away address, as well as a dearth of indicators that she retained any ties to 18 Abington Square. (See, Beth Israel Med. Ctr. v Matsil, NYLJ, Nov. 21, 1991, at 26, col 4 [App Term, 1st Dept]; Sommer v Ann Turkel, Inc., 137 Misc 2d 7, 9-10 [App Term, 1st Dept 1987]; Emay Props. Corp. v Norton, 136 Misc 2d 127, 128 [App Term, 1st Dept 1987]; Michael Realty v Sampietro, NYLJ, Dec. 24, 1991, at 23, col 2 [Civ Ct, NY County].) Thus, Kathy Brady no longer occupies 18 Abington Square, apartment 1, as her primary residence. (See, Administrative Code of City of NY § 26-403 [e] [2] [i] [10].)
B. Respondent John Brady’s Succession to Possession of the Rent-Controlled Apartment
Respondent John Brady, Kathy Brady’s nephew, resided with her at 18 Abington Square, apartment 1, for at least two years during 1992 to 1997, until she ceased to maintain the apartment as her primary residence, and he continues to reside there. Thus, under the law in effect at least until 1997, John Brady lived with his aunt for the requisite two years to succeed to his aunt’s possessory right to the apartment. (9 NYCRR 2204.6 [d].)
A statutory amendment effective June 19, 1997, however, removed nephews from the definition of traditional family *336 members entitled to succession rights. (Public Housing Law § 14 [4].) As John Brady established succession rights before the amendment’s effective date, these circumstances raise the issue whether this amendment’s retroactive effect is sufficiently limited to permit Mr. Brady to succeed his aunt as tenant.
Public Housing Law § 14 (4), referring to the New York State Division of Housing and Community Renewal (DHCR), states that:
“The agency shall promulgate regulations, rules and policies which provide for the rights of family members to succeed in certain cases to the rights of tenants protected by * * * the local emergency housing rent control act, the administrative code of the city of New York and any regulations, rules and policies enacted pursuant thereto. Such regulations, rules and policies shall contain provisions which include, but shall not be limited to, the following:
“(a) that * * * any member of the tenant’s family, as defined in paragraph (c) of this subdivision, shall succeed to the rights of a tenant under such acts and laws where the tenant has permanently vacated the housing accommodation and such family member has resided with the tenant in the housing accommodation as a primary residence for a period of no less than two years * * * immediately prior to the permanent vacating of the housing accommodation by the tenant * * *
“(c) that for the purposes of such regulations: (i) ‘family member’ shall be defined as a husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, grandfather, grandmother, grandson, granddaughter, daughter-in-law, son-in-law, mother-in-law or father-in-law of the tenant; or any other person residing with the tenant in the housing accommodation as a primary residence who can prove emotional and financial commitment, and interdependence between such person and the tenant.” (Emphasis added.) This statutory language is substantively identical to 9 NYCRR 2204.6 (d), which has remained unchanged since before 1997, except the statute eliminates nieces, nephews, aunts, and uncles from the definition of “family members” eligible for succession. '
The statutory language presents two threshold questions pertinent to whether its definition or 9 NYCRR 2204.6 (d)’s definition of family members applies to Mr. Brady. Is application of the new definition dependent on DHCR promulgating new regulations? Given that the regulatory definition need *337 “not be limited to” the statutory definition (Public Housing Law § 14 [4]), is the current 9 NYCRR 2204.6 (d) a proper implementing regulation without change? If the answer to either question is affirmative, “family members” eligible for succession still include nieces, nephews, aunts, and uncles and, hence, John Brady.
Even if the answer to both questions is negative, and the statutory definition supplanted the regulatory definition upon the statute’s enactment, it does not apply retroactively to persons who established succession rights before June 19, 1997. The succession rights laws apply retroactively only to the extent they accomplish the legislation’s remedial purposes. Although tightening the definition of family members may have been intended to remedy the adverse effects on landlords of the more expansive definition, the remedial purpose of legislation governing rent control succession rights, as a whole, remains the protection of tenants and their family members from eviction. Where a new law confers a tenancy right, the law is applied retroactively, but where it takes away a right conferred by the old law, the new law is not applied retroactively. (Beary v City of Rye, 44 NY2d 398, 411-413 [1978]; Morales v Gross, 230 AD2d 7, 14-15 [2d Dept 1997].)
Consequently, amendments to the rent control laws are not applied retroactively when they would evict a tenant entitled to protection under the prior law. (Gottlieb v Licursi, 191 AD2d 256, 257 [1st Dept 1993]; 911 Alwyn Owners Corp. v Rosenthal, 157 Misc 2d 828, 830-831 [Sup Ct, NY County 1992], affd 190 AD2d 621 [1st Dept 1993]; 43-45 W. 129th St. HDFC v Doe, NYLJ, Mar. 2, 1992, at 31, col 2 [Civ Ct, NY County]; Coleman v Sillman, NYLJ, Mar. 6, 1991, at 22, col 6 [Civ Ct, NY County].) Since John Brady succeeded his aunt as tenant at 18 Abington Square, apartment 1, under the law in effect before June 1997, Public Housing Law § 14 (4) does not apply retroactively to deprive him of that right.
C. The Owner’s Right to Charge John Brady a Vacancy Allowance
As John Brady is a successor to Kathy Brady’s interest in the apartment, because Kathy Brady succeeded her parents, her nephew became a second successor tenant. Another statutory amendment, effective June 19, 1997, entitles owners to charge a vacancy allowance to second successor tenants. (Administrative Code § 26-403.2.) Unlike the amendment removing nephews from the definition of traditional family *338 members, the retroactive application of the new Administrative Code § 26-403.2 is clear from the statute. It expressly applies only “where all tenants occupying the housing accommodation on the effective date of this section have vacated.” (Ibid.) If John Brady already occupied the apartment by 1997, the vacancy allowance is unavailable until he vacates. It will apply only if a family member succeeds him and then “to each subsequent second succession.” (Ibid.)
D. Ownership of the Premises and Commencement of the Proceeding
Upon the presentation of evidence establishing the following facts at the end of petitioner’s case, however, respondents moved to dismiss the entire petition. From 1949 until his death in May 1998, Mesrob Vartanian owned 18 Abington Square. On June 17, 1998, Delfi Soto signed the notice terminating respondents’ tenancy, and on August 24, 1998, he signed the petition. He signed both documents as petitioner’s agent.
Robert Cancellare is the registered managing agent for the premises. For at least the last eight years, he has been the managing agent on a “day-to-day” basis (transcript of proceedings, at 12 [Jan. 26, 1999]), in conjunction with Mesrob Vartanian’s son, John Vartanian, who has managed the building for the last 15 years.
In Mesrob Vartanian’s will of January 1996, he left the property to John Vartanian and his two brothers and named John Vartanian executor of the estate. On November 30, 1998, the will was admitted to probate, and on December 1, 1998, letters testamentary were issued authorizing John Vartanian to administer the estate.
Respondents sought dismissal on the grounds that the petition had been brought in the name of a deceased person, and the notice of termination and the petition were signed by a person without authority. In response, petitioner’s counsel moved to amend the petition to name the estate of Mesrob Vartanian petitioner.
II. THE PETITION AND TERMINATION NOTICE MAY NOT BE AMENDED TO NAME THE ESTATE OF MESROB VARTANIAN PETITIONER AND TO BE SIGNED BY AN AGENT OF THE ESTATE
*339 A. The Petition and Termination Notice Were Not Signed by a Person Authorized to Initiate the Proceeding
Although the evidence established ownership of the premises, it was not by the named petitioner, who died before the proceeding was commenced. Even if Delfi Soto, who signed the termination notice and petition as agent for the deceased petitioner, was an authorized agent for that purpose when the deceased was alive (RPAPL 741), the principal’s death revoked the agent’s authority to act for the principal. (Wisdom v Wisdom, 111 AD2d 13, 14-15 [1st Dept 1985]; Hemphill v Rock, 87 AD2d 836 [2d Dept 1982].) Any purported legal action on behalf of a decedent, absent appointment of an executor, administrator, or other party competent to represent the estate, is a nullity and subject to vacatur. (Silvagnoli v Consolidated Edison Empls. Mut. Aid Socy., 112 AD2d 819, 820 [1st Dept 1985]; Meagher v ARA Serv., 242 AD2d 286, 287 [2d Dept 1997]; Macomber v Cipollina, 226 AD2d 435, 436-437 [2d Dept 1996].)
The court may grant a motion to change the named petitioner to a decedent’s estate if, when the proceeding was commenced, the estate had a representative competent to bring the proceeding. (CPLR 2001; Rosenberg v Caban, 16 NY2d 905, 906 [1965]; McDonough v Bonnie Hgts. Realty Corp., 249 AD2d 520, 521 [2d Dept 1998]; Kramer v Twin County Grocers, 151 AD2d 722, 723 [2d Dept 1989].) In such a case, the representative could ratify nunc pro tunc any prior action the representative or an agent for the estate had taken in prosecuting the proceeding. (Carp v Marcus, 114 AD2d 695, 696 [3d Dept 1985]; Wichlenski v Wichlenski, 67 AD2d 944, 946 [2d Dépt 1979].)
Here, John Vartanian did not become executor of the named petitioner’s estate until after the termination notice was served and the notice of petition and petition were filed. The evidence did not otherwise indicate that he, Delfi Soto, or any other person was authorized to initiate litigation on behalf of the decedent’s estate when this proceeding was commenced or that Delfi Soto was that person’s agent. (Manhanaim Resort Corp. v Samples, 156 AD2d 342, 344 [2d Dept 1989]; Carp v Marcus, 114 AD2d, supra, at 696; Hemphill v Rock, 87 AD2d, supra, at 836-837; Gross v New York State Teachers Retirement Sys., 81 Misc 2d 964, 966-967 [Sup Ct, Albany County], revd on other grounds 50 AD2d 980 [3d Dept 1975].)
In the absence of anyone to stand in for the deceased named petitioner, a judgment by this court would be a nullity. *340 (Manhanaim Resort Corp. v Samples, 156 AD2d, supra, at 344; Estate of Agliata v Agliata, 155 Misc 2d 385, 388 [Sup Ct, Erie County 1992].) The court has no jurisdiction to conduct proceedings commenced by persons without authority to act on behalf of the named petitioner or his estate. (Harding v Noble Taxi Corp., 155 AD2d 265, 266 [1st Dept 1989]; Oberlander v Levi, 207 AD2d 437, 438 [2d Dept 1994]; Bossert v Ford Motor Co., 140 AD2d 480, 481 [2d Dept 1988].)
The “active participation of the parties in the litigation, without objection,” may constitute a waiver of the right to object to unauthorized proceedings. (Durrant v Kelly, 186 AD2d 237, 238 [2d Dept 1992].) Here the basis for the objection emerged only at the conclusion of petitioner’s case when petitioner’s counsel proved that Mesrob Vartanian died before the proceeding was commenced, and John Vartanian’s capacity as executor of Mesrob Vartanian’s estate matured after the proceeding was commenced. Thus respondents’ objection is timely. (See, Bauernfeind v Albany Med. Ctr. Hosp., 154 AD2d 754, 755, n 1 [3d Dept 1989].)
B. The Termination Notice May Not Be Amended by Substituting an Authorized Signature
Even were the court to permit the named petitioner to be replaced by the estate of Mesrob Vartanian or the current owner, John Vartanian, the petition must be dismissed on other grounds. A valid notice of termination is a condition precedent to the proceeding. (170 W. 85th St. Tenants Assn. v Cruz, 173 AD2d 338, 339 [1st Dept 1991].) Such notices are not amendable; their defects may not be cured retroactively. (Chinatown Apts. v Chu Cho Lam, 51 NY2d 786, 787 [1980]; see also, e.g., First Fed. Sav. & Loan Assn. v Souto, 158 Misc 2d 219, 221 [Civ Ct, NY County 1993]; Homestead Equities v Washington, 176 Misc 2d 459, 464 [Civ Ct, Kings County 1998].)
A notice of termination may be issued only by a person authorized “to bind the landlord in the giving of such notice.” (Siegel v Kentucky Fried Chicken, 108 AD2d 218, 220 [2d Dept 1985], affd 67 NY2d 792 [1986]; see also, Linroc Enters. v 1359 Broadway Assocs., 186 AD2d 95 [1st Dept 1992].) Delfi Soto, identified as the agent of a deceased person, signed the termination notice. The principal’s death, however, terminated that agency. Soto had no authority to issue the notice unless when this proceeding was commenced he was empowered to *341 initiate eviction proceedings as the representative of the decedent’s estate or as such a representative’s agent. (Manhanaim Resort Corp. v Samples, 156 AD2d, supra, at 344.) No such principal has been identified.
Thus, even were the court to permit a replacement by the named petitioner, a condition precedent to the proceeding has not been satisfied. That condition may not be revived nunc pro tunc by adding a competent signer to the termination notice. (Chinatown Apts. v Chu Cho Lam, 51 NY2d, supra, at 787.) “Where a defective predicate notice has been served, the proceeding based thereon falls with the defective notice.” (First Fed. Sav. & Loan Assn. v Souto, 158 Misc 2d, supra, at 221.)
On this ground, the court must dismiss the petition. In sum, the termination notice and the petition suffer from nonamendable defects because they were signed and the proceeding thus commenced on behalf of a deceased person by a person not shown to have any authority to do so. Even if the petitioner could be changed to the decedent’s estate or to the new owner and the petition signed by that party’s authorized representative, the predicate notice may not be changed.