RP Wimbledon Owner, LLC v Chisholm (2025 NY Slip Op 25071)

[*1]

RP Wimbledon Owner, LLC v Chisholm

2025 NY Slip Op 25071

Decided on March 21, 2025

Civil Court Of The City Of New York, New York County

Meyers, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 21, 2025
Civil Court of the City of New York, New York County

RP Wimbledon Owner, LLC, Petitioner(s),

against
Theresa Chisholm, "JOHN DOE" and "JANE DOE", Respondent(s).

Index No. LT-318196-24/NY

Tarter Krinsky & Drogin LLP (Shari S. Laskowitz, Esq.) for Petitioner;
Sanctuary for Families—Center for Battered Women's Legal Services (Rachel Phillips, Esq.) for Respondent Theresa Chisholm.

Adam R. Meyers, J.

Recitation, as required by CPLR § 2219(a), of the papers considered in the review of the motion:
Papers NYSCEF Doc. Nos.
Notice of Motion (Seq. 1) and supporting papers 10-13
Notice of Cross-Motion (Seq. 2) and supporting papers 15-16
Affirmation in Reply and supporting papers 17
Upon the foregoing cited papers, the court's decision and order is as follows:
This summary holdover proceeding was commenced in October 2024. Petitioner alleges that Respondent Theresa Chisholm's tenancy expired following timely service of notice of non-renewal of the lease. The parties agree that Respondent's tenancy was covered under New York's Good Cause Eviction Law (GCEL). Petitioner pleads as the grounds for this proceeding that Respondent failed to pay rent she owed under her lease.
Before the court are two motions. The first is Respondent's motion seeking dismissal of the proceeding under CPLR § 3211(a)(7), and the second is Petitioner's cross-motion for use and occupancy. For the reasons that follow, Respondent's motion is granted and Petitioner's motion is denied as academic.
Respondent's motion asserts two similar but distinct arguments for why dismissal is required—first, that the notice of non-renewal failed to provide sufficient facts regarding the alleged nonpayment, and second, that the petition's lack of detail regarding the nonpayment rendered it deficient under RPAPL § 741(4). These arguments—each apparently presenting an issue of first impression in the GCEL context—will be addressed in turn.
A. The Notice of Non-Renewal
On a motion to dismiss under CPLR § 3211(a)(7), the court must afford pleadings a liberal construction, accept the facts as alleged in the petition as true, accord the petitioner every favorable inference, and determine only whether the facts as alleged fit into a cognizable legal theory (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). The court may also freely consider any affidavits or proof offered by a petitioner to remedy defects in the petition (id. at 88).
The relevant facts are these. On May 17, 2024, Petitioner served upon Respondent a document titled 'Ninety (90) Day Notice of Intention not to Renew Tenancy' (the Notice of Non-Renewal). This notice, required under RPL § 226-c, stated in relevant part that
pursuant to Real Property Law § 216(1)(a)(i), the [Petitioner] has good cause for removal or eviction because you have failed to pay rent due and owing.
(see Notice of Non-Renewal, NYSCEF Doc. No. 3, p. 2). Beyond this, the notice is silent as to Respondent's nonpayment.
Respondent argues that this notice is deficient under the applicable legal standards, and thus that the proceeding must be dismissed. She notes that predicate notices in summary proceedings must be "definite and unequivocal" (Garsen v Hohenleitner, 73 Misc 2d 192 [App Term, 1st Dept 1973]) and include a degree of factual specificity "reasonable in view of all attendant circumstances" (Hughes v Lenox Hill Hosp., 226 AD2d 4, 17 [1st Dept 1996], lv dismissed and denied, 90 NY2d 829 [1997]). She argues that where a landlord serves notice of its intention not to renew a lease on grounds of nonpayment but fails to include an accounting or timeline of the alleged arrears, the notice fails under these standards (see Affirmation of Rachel Phillips, NYSCEF Doc. No. 11, ¶¶ 45-52).
Petitioner argues in opposition that it has complied with all statutory requirements in commencing this proceeding (see Affirmation of Shari S. Laskowitz, NYSCEF Doc. No. 16, ¶ 15). It notes that neither § 226-c nor § 231-c of the Real Property Law expressly requires that a notice of non-renewal alleging nonpayment include an accounting of the alleged arrears (id. at ¶¶ 12-15). It argues that the legislature in § 231-c went to great lengths to identify all the information a landlord is required to provide to a tenant under GCEL, and that its omission of any calculation of rent arrears should be determinative (id. at ¶ 13).
A baseline requirement for any notice terminating a tenancy and serving as the basis for an eviction proceeding is that the notice be "clear, unambiguous and unequivocal" (City of Buffalo Urban Renewal Agency v Lane Bryant Queens, Inc., 90 AD2d 976, 977 [4th Dept 1982], aff'd 59 NY2d 825 [1983]).[FN1]
Termination notices have failed to meet the aforementioned standard where their language has been unclear regarding whether the lease was being terminated (see Ellivkroy Realty Corp v HDP 86 Sponsor Corp, 162 AD2d 238, 238 [1st Dept 1990]), when such termination would be effective (see Town of Islip v Kismet Park Corp., 38 Misc 3d 131 [A] [App Term, 9th & 10th Jud Dists 2012]), and the consequences for the tenant upon termination (see, e.g., New York City Housing Auth. v Rosario, 65 Misc 3d 1205 [A] [Civ Ct, Bx Cnty 2019]). Here, the Notice of Non-Renewal satisfies this standard. It clearly and [*2]unambiguously indicates that the lease would not be renewed, that Respondent was directed to vacate by August 31, 2024, and that Petitioner would commence eviction proceedings if Respondent failed to vacate by that date.
However, additional requirements are imposed on notices when the termination in question is predicated upon some specific cause. These notices must identify the legal basis for the termination and the supporting facts with a level of particularity "reasonable in view of all attendant circumstances" (Hughes v Lenox Hill Hosp., 226 AD2d 4, 17 [1st Dept 1996], lv dismissed and denied, 90 NY2d 829 [1997]). Reasonableness under this test requires that a notice include sufficient facts to allow the tenant to frame a legal defense and otherwise defend their tenancy (Jewish Theological Seminary of America v Fitzer, 258 AD2d 337, 338 [1st Dept 1999]). While this standard was originally articulated in the context of rent-regulated tenancies, courts have applied it broadly to include those circumstances where cause is required under contract provisions (see Rascoff/Zsyblat Organization, Inc. v Directors Guild of America, Inc., 297 AD2d 241, 242 [1st Dept 2002]), federal due process protections (Jewish Board of Family and Children's Services, Inc. v Sabater, 82 Misc 3d 1241 [A] [Civ Ct, Bx Cnty 2024]), and other statutory provisions (see, e.g., Herzl Realty LLC v Almodovar, 79 Misc 3d 1223 [A] [Civ Ct, Kings Cnty 2023] [notice of termination did not address ERAP protections]). RPL § 215 provides that "[n]o landlord shall [...] by failure to renew any lease [... ] remove any tenant from" an apartment covered by GCEL "except for good cause[.]" Because this statutory provision requires good cause for the act of non-renewal itself, § 226-c notices for units covered under GCEL must include factual allegations sufficient to satisfy the Hughes reasonableness standard.
What this standard requires in view of the "attendant circumstances" of this residential holdover proceeding on the basis of nonpayment under GCEL is an issue of first impression. However, in a commercial context, holdover proceedings based upon rent nonpayment are not new, and decisions of the First and Second Departments addressing these are instructive (see 542 Holding Corp. v Prince Fashions, Inc., 46 AD3d 309 [1st Dept 2007]; Westhampton Cabins & Cabanas Owners Corp. v Westhampton Bath & Tennis Club Owners Corp., 62 AD3d 987, 988 [2d Dept 2009]). In Prince Fashions, the court evaluated a notice to cure threatening termination of the lease on the basis of nonpayment of rent. In determining the notice passed muster, the court borrowed the standard commonly applied to rent demands in nonpayment proceedings, citing Schwartz v Weiss-Newell, 87 Misc 2d 558 [Civ Ct, NY Cnty 1976], for the proposition that
[a] proper demand for rent must fairly afford the tenant, at least, actual notice of the alleged amount due and of the period for which such claim is made. At a minimum, the landlord or his agent should clearly inform the tenant of the particular period for which a rent payment is allegedly in default and of the approximate good faith sum of rent assertedly due for each such period.
(46 AD3d at 311). In Westhampton Cabins & Cabanas, the court cited Weiss-Newell among other authorities in approving a notice that "apprised the [tenant] that it owed the landlord certain sums of money [and] specified the amount due for fixed and additional assessments of rent as of a certain date" (62 AD3d at 988).
The notices in these commercial holdover proceedings are analogous to the notice of [*3]non-renewal in the instant case insofar as both notices are necessary predicates for eviction proceedings but contemplate the possibility of cure. Indeed, GCEL is explicit on this point. RPL § 216(3) notes that nothing in the section
shall abrogate or limit the tenant's right pursuant to [RPAPL § 751] to permanently stay the issuance or execution of a warrant or eviction in a summary proceeding, whether characterized as a nonpayment, objectionable tenancy, or holdover proceeding, the underlying basis of which is the nonpayment of rent[.]
RPAPL § 751(1) allows a tenant holding over after nonpayment to obtain an automatic and indefinite stay of eviction upon depositing with the court clerk the rent due before issuance of a warrant. Additionally, courts have observed that any contractual provision allowing for the termination of a residential tenancy on grounds of nonpayment would be against public policy to the extent it did not allow a cure (61 East 72nd Street Corp. v Zimberg, 161 AD2d 542, 542 [1st Dept 1990]; Park Summit Realty Corp. v Frank, 107 Misc 2d 318, 323-324 [App Term, 1st Dept 1980]). As alluded to in Respondent's papers (see Phillips Aff., NYSCEF Doc. No. 11, ¶¶ 36-37), the public policy consideration militating in favor of a cure option is New York's consistent endorsement of rent withholding as a valid means of motivating a landlord to comply with health and safety standards (see RPL § 235-b; MDL § 302-a; RPAPL § 770 et seq.; SSL § 143-b; Ansonia Assocs. v. Ansonia Residents' Assoc., 78 AD2d 211, 220 [1st Dept 1980]; Whitby Operating Corp. v. Schleissner, 117 Misc 2d 794, 800 [Sup Ct, NY Cnty 1982]). The possibility of an incurable lease termination for tenants who availed themselves of these remedies would undoubtedly have a chilling effect, to the detriment of the condition of the housing stock and the health and safety of the renting populace.
Applying the Weiss-Newell standard to the Notice of Non-Renewal yields the conclusion that the notice was unreasonable under the circumstances. While it recited the statutory provision upon which the termination was based, it failed to clearly inform Respondent of the period for which rent was due or the approximate sum owed. Rent demands that fail to provide such basic notice of alleged rent arrears are consistently rejected by the courts (see, e.g., EOM 106-15 217th Corp. v Severine, 62 Misc 3d 141 [A] [App Term, 2d Dept 2019] [rent demand misstated period for which rent was owed due to misattribution of earmarked payment]; 75 Wall Associates LLC v Zordan, 78 Misc 3d 1236 [A] [Civ Ct, NY Cnty 2023] ["The demand itself must apprise the Respondent of the rents owed and for what periods, not, as Petitioner argues, the demand in combination with whatever documents the Respondent may possess."]). Therefore, the Notice of Non-Renewal was unreasonable under the circumstances, and this holdover proceeding predicated thereupon must be dismissed.
B. The Petition
Respondent also seeks dismissal on the basis that the Petition fails to state the facts upon which the proceeding is based as required by applicable law. The Petition was filed on October 14, 2024. It annexed and incorporated by reference a copy of the Notice of Non-Renewal and otherwise stated with respect to the rent owed by Respondent that
Respondent is liable to Petitioner for rent in the amount of 28,350.00 through August 31, [*4]2024, plus the fair value of use and occupancy from September 1, 2024 through the date of judgment, and reasonable attorneys' fees incurred by Petitioner in its prosecution of this proceeding, in an amount to be determined by the Court.
(see Petition, NYSCEF Doc. No. 1, ¶ 12). The Petition also annexed the 'Notice to Tenant of Applicability or Inapplicability of the New York State Good Cause Eviction Law' (the GCEL Rider) (see NYSCEF Doc. No. 2, p. 3 et seq.). Petitioner checked the boxes on that form indicating that the subject premises is subject to GCEL and that the good cause for nonrenewal of the lease was the tenant's failure to pay rent due and owing (id. at pp. 3-5).
A petition in a summary eviction proceeding must "[s]tate the facts upon which the special proceeding is based" (RPAPL § 741 [4]). Following the promulgation of GCEL, a petition must also annex a notice in the form established by RPL § 231-c (RPAPL § 741 [5-a]; RPL § 231-c [1]).
As an initial matter, it is clear that the GCEL Rider included by Petitioner with the Petition and its other attachments satisfied the requirements of RPAPL § 741(5-a). To the extent that Respondent argues that the fact that this document was filed on NYSCEF as part of a single PDF with the Notice of Petition, rather than with the Petition, renders the Petition defective (see Phillips Aff., NYSCEF Doc. No. 11, ¶¶ 63-65), the court disagrees. The GCEL Rider was included among the papers served with the Petition, and it contained the language required by the applicable statutes.
But there remains the question of whether the GCEL Rider, the Notice of Non-Renewal, and the statement of the lump sum of rental arrears, taken together, satisfy the requirement of § 741(4) that the Petition state the facts upon which the proceeding is based regarding Respondent's nonpayment. The court concludes that they do not.
The pleading requirements in § 741 serve to inform a respondent "of the factual and legal claims that he or she will have to meet" and enable the tenant "to interpose whatever defenses are available" (MSG Pomp Corp. v Doe, 185 AD2d 798, 800 [1st Dept 1992]). Where a petition in a proceeding predicated upon nonpayment merely states a total sum of rent arrears without specifying "the underlying facts upon which th[e] conclusion is based[,]" it does not meet the requirements of § 741 (Goldman Bros. v Forester, 62 Misc 2d 812, 814 [Civ Ct, NY Cnty 1970]).
In this case, the Petition fails to comply with the requirements of § 741[4], because the plain statement of a lump sum of arrears failed to provide the Respondent with the information necessary to identify and interpose potential defenses. Did these arrears accrue before the Notice of Non-Renewal was served, or after? Do they represent payments tendered but not deposited? Checks that were lost or stolen? Did the shortfall result from payments having been applied toward other fees? Without a basic articulation of the specific payments that were missed or the periods of time in which the arrears accrued, a tenant is prejudiced in their ability to resolve the underlying dispute or craft a legal defense. While a petition—unlike a prerequisite notice (see Chinatown Apartments, Inc. v Chu Cho Lam, 51 NY2d 786, 788 [1980])—is potentially amendable absent prejudice, here the Petitioner has not moved for this relief.
Because the Petition fails to pass muster under § 741(4), the proceeding must be dismissed.
THEREFORE, it is
ORDERED that Respondent's motion to dismiss is GRANTED and the proceeding is [*5]dismissed; and
ORDERED Petitioner's cross-motion for use and occupancy is DENIED as academic.
This constitutes the decision and order of the court.
Dated: March 21, 2025
New York, New York
Hon. Adam R. Meyers
Judge, Housing Court

Footnotes

Footnote 1:While the notice in question is denominated a notice of intention not to renew rather than using the language of termination, it nevertheless functions to terminate the tenancy and was a necessary predicate for the instant holdover proceeding.